My name is Kevin Zimmerman and I represent the Appellants, United Services Automobile Association and USAA General Indemnity Company. At the heart of this case are two competing interpretations about how to calculate the actual cash value of a total loss vehicle in Louisiana. USAA believes that based on its policy language and based on the governing statute, it must determine the actual cost to purchase a comparable motor vehicle, which necessarily requires consideration of the unique condition and features of the lost vehicle at issue. All of the evidence in this case shows the vehicle's value depends on its unique condition. Plaintiffs offer a contrary interpretation of the statute, though not the policies, suggesting that any valuation referenced in the governing statute, LARS 22-1892-B5, can establish the actual cash value of a vehicle as a matter of law, irrespective of the unique condition or features of that vehicle. Well, let me make sure that you're presenting to us about what Judge Kain, how Judge Kain left this. I thought the import of his decision, you disagree with the starting point, but I thought he still allowed adjustments to the value based on the actual condition. You were disputing how he allowed that or how it would proceed and doing it on a class-wide basis. Is that correct? So I think importantly, Judge Kain's opinion did not actually reach a factual finding as to whether CCC's condition adjustments can be applied on top of NADA values. This is page 17-18 of his opinion. He sort of cited all of the contrary evidence that USAA presented in the record and said, well, this is an issue we don't have to address. This is a merits issue that we can kick to a later stage. And USAA believes that that's a legal error because without a finding that CCC's condition adjustments can be locked on top of NADA values, there's no common proof. There's no generalized proof. There's no common evidence in the record to establish. Those are important arguments, but let me just make sure. Did Judge Kain recognize the need to try to evaluate or determine what the actual condition of a vehicle was insofar as determining? You say he's not doing it the right way. He's also doing this as a matter of damages and not a matter of liability and whether the person's a proper class member at all and whatever else. But he did recognize the need to try to determine the actual value of the total vehicle before the damage. Yes, we think that's right, Your Honor. And this is actually clear from the transcript there as well. Judge Kain, we cite the transcript portion in a footnote in our brief. I believe it's footnote four of the opening brief. Judge Kain says to plaintiff's counsel, well, I was suggesting that you only get NADA clean retail without adjusting for condition. And plaintiff's counsel said, yes, you're right. And Judge Kain confirms, yes, because we have to account for the unique condition of each vehicle. Well, I slowed you down. Why don't you move on? Apologies. OK. Judge Kain did seem to be relying heavily on Slade. And to my knowledge, the argument you're making now is one that was addressed by Slade. I saw your brief as suggesting at least three, maybe more, reasons to reverse. One was a standing question. Two, I can shorthand it as saying, NADA values, N-A-D-A values, that's arbitrary. The third is the one you've begun with. But I thought the third was pretty decided by Slade. So I can give Your Honor four reasons here why I think Slade is not controlling. And I'll start with that position. But what's your primary argument for reversing? What is the legal error that the district court made in certifying this class? The legal error the district court made is that it found commonality and predominance to be satisfied based on a single question of statutory interpretation that does not establish liability for any single class member. Both the elements of the causes of action alleged by plaintiff and the Article III standing analysis require each class member to show an actual injury, an underpayment. And you're saying by selecting NADA, that's arbitrary because there are other recognized standards that might have been less. Therefore, we don't know if there's an injury. Is that essentially your argument? Correct, Your Honor. I think there's two components to it. One is that NADA, correct, does not establish the actual cash value of any given vehicle. It gives a generalized benchmark price. And USAA believes that both its policies and the statute require consideration of the unique condition. And I'm assuming he said he'll get to those unique conditions later if he needs to. And that he thinks he can do pursuant to Slade. So I'm sort of lopping off the first part. Even if that's true, that the class is good and he gets great deferences, great damages. The legal error of selecting NADA alone. Yes, Your Honor. And I think this gets to the distinguishing, the difference between the record in this case and the record in Slade. What Slade said was based on the evidence presented in that case. The court said there was no principled reason why WCTL's condition adjustments couldn't be applied on top of NADA values. And in this case, the record contains testimony from CCC itself, testimony from an independent expert, and testimony from NADA itself saying, no, no, no, if you take CCC's lost vehicle condition adjustments and put it on top of NADA values, that's not going to produce accurate vehicle values. One of the reasons for this was discussed by the district court opinion in Prudhomme, which post-slated Slade and had the sort of benefit of knowing what Slade held. And what the court said in Prudhomme was that the baseline of the condition adjustments in this case are different than the baseline of the condition adjustments of the WCTL product. The WCTL product... But in Prudhomme, this district court sort of dodged around Prudhomme, published or unpublished, by saying... Correct. ...the class can only be those people that weren't paid, according to CCC, that were paid less than any guidebook that... That's not what the district court did, Your Honor. The district court limited the class to individuals whose CCC-based value was less than NADA-based value. My question for you, given that, I agree with you. What guidebook would you concede is a legally acceptable report? We think the guidebook's values are a starting point. And that's what the guidebooks themselves say. That's what all of the evidence in this case says. Whether using NADA or KBB or Manaheim Market Reports or an electronic database like CCC, like WCTL, you have to consider the unique condition and value of the lost vehicle at issue. Because neither NADA nor KBB nor any other guidebook purports to give the unique value of a vehicle at issue. Okay. All right. Well, your argument is coherent throughout. It's resisting my premise, so my premise may be wrong. CCC seems to be internal to USAA. So therefore, it's very hard for me to think that it qualifies as 1892, generally recognized. So then I'm really wondering, what's the limited orbit of generally recognized guidebooks? That's kind of a legal question that's out there. And there's a number of guidebooks that could fulfill the statute. And that's why, even if plaintiff's theory is correct, that any guidebook referenced in the statute establishes actual cash value as a matter of law, that doesn't solve the predominance issues here. And it doesn't solve the adequacy issues either. Because there's going to be issues... And it doesn't solve the standing issue either. And it does not solve the standing issue. And your eyes, your honor, knows, standing was not addressed in Slade. Slade was decided before TransUnion. And the Supreme Court's opinion in TransUnion said two things. One, before we get to a judgment on the merits, every class member has to show standing, irrespective of the class actual device. TransUnion did adopt and reinforced AMCAP. So the way I read those two cases, the Supreme Court's still saying focused on the named plaintiffs. Correct. I think the way to look at TransUnion in the class certification setting is the way the 11th Circuit's done it in Cordova, and also has subsequently applied it in Drazen v. Pinto. The 9th Circuit intimated this as well in Olean v. Bumblebee. What they say is that the standing analysis really raises predominance problems. Because at some point before a judgment on the merits, we're going to have to determine which class members were and were not harmed. And in this case, that means determining which class members were or were not underpaid. And the only way to do that under USAA's theory of the reading of the policy is to look at the actual unique condition and value of the vehicle. And the only way to do that under plaintiff's reading of the statute is to have these mini-trials about every other possible generally recognized used motor vehicle industry source or fair market value. I would have thought the same question in a class case would be, we'd look at the named plaintiffs. Now you may say your argument still stands as to them. So we've not contested the named plaintiffs' standing in this case, though. In our summary judgment briefs, we say based on the proper guidebook value, they weren't actually underpaid. The summary judgment briefs have not yet been resolved by the district court. But I believe that the standing issue still does raise important predominance problems. Well, Samson, for example, what do you lose under the value according to NADA would be what? I don't recall offhand, Your Honor, Mr. Samson. Let's say it's 6,700. And according to CCC, your measure, it's 5,900. Now that doesn't necessarily establish injury because plaintiffs don't say. I agree. So why are you conceding standing as to a named plaintiff if that doesn't establish injury? So your apologies, Your Honor. Let me say, at this point of the case, plaintiffs have alleged standing to get to the class certification point. They've alleged an underpayment. And what we're saying that there is not actually an injury for Plaintiff Samson or any other class member because we'd have to look at any other possible predominance or guidebook to see whether that individual was underpaid. And how hard would that be? I think it'd be... So there's a finite set, Kelly Blue Book. Let's just go through the finite set that Louisiana law accepts. And if CCC was less than the lowest. So two responses to that, Your Honor. One is that it's not just guidebooks. The statute references any generally recognized... And that's why I keep asking you, where do we find the finite set? I don't think that's been defined. And I think that's important. The reason that the Louisiana legislature hasn't defined the finite set is because the purpose of this statute isn't to say, you get NADA, you get Kelly Blue Book, you get Mannaheim Market Reports. The underlying purpose of the statute, and this is the introductory phrase of the statute, it compels insurers to pay the actual cost, to pay a comparable motor vehicle. That's consistent with the decades of Louisiana precedent that predated the statute, which recognized that guidebooks don't set the specific value of a vehicle. And even when a guidebook is something you can look at to value a vehicle, the Clark v. McNabb case says, well, it's a question of fact as to what the most appropriate guidebook is. In some situations, NADA may be more accurate than KBB, might be more accurate than Mannaheim Market Reports. And the point of all this is also the point of insurance itself. And this is the Paley v. Munoz case from the Louisiana appellate courts. It says that insurance compensates for loss. Loss is the actual value of the vehicle in this case. If NADA is providing a generalized benchmark price that doesn't establish the actual value of the vehicle, then we're creating perverse incentives as well, because that means insurers can generate value for their vehicles that are much higher than the actual guidebook or the actual value of their vehicle itself. That sounds to me like you're pushing against Slade, which is fine. I am pushing against Slade, Your Honor. I'll quickly say four reasons why I think Slade is not applicable to the case here. First, Slade did not address the adequacy issue here. I agree. Second, Your Honor, Slade did not actually address the underlying predominance problem here. Slade commented on the Comcast fit between plaintiff's liability theory and plaintiff's model of damage. It sort of assumed that the liability theory was correct. And after all, Slade reversed the district court's opinion. So we can't read it as sort of implicitly affirming anything it didn't discuss. What Slade did not address was whether there was a generalized theory of proof to establish to which class members USAA, or in that case, progressive, was or was not liable to. That's the first precedent in Gene and Gene v. Biopay. And fourth, Your Honor, as we discussed earlier, I think the record in this case is fundamentally different than the record from Slade. The prudent district court point I mentioned earlier is that the condition adjustment of the WCTL product started from what's called a dealer-ready vehicle, a vehicle that's, they called it 3.0. Other sources call it dealer-ready. USAA calls it very good. That's the same condition of baseline that NADA uses. CCC starts from a different condition baseline. They start from a good condition baseline. So for example, if my vehicle was in dealer-ready condition, if it had been recently detailed, new tires, et cetera, what CCC is going to do is they're going to start from the baseline of good, and they're going to give me an adjustment to bring my vehicle up to dealer-ready condition, which is where WCTL and NADA start. And that shows why you can't just take the CCC condition adjustment and lop it on top of NADA, because it'll be double-counting. But you have your stance in front of the district court to say infeasibility, and the district court points to experts and say, we can do this in two minutes. The experts did not say, all that the experts said in this case is, I can take the numbers and I can add and subtract numbers. The experts did not discuss whether it was legally or factually appropriate to apply CCC's condition adjustments on top of NADA values. I deposed plaintiff's expert in this case, and I asked her, what support do you have? How do we know this is going to produce accurate vehicle values? And what she said is, I'm not here to offer that opinion. The only opinion I'm offering here is, you can take this number, you can take that number, and you can add them together. That's the only opinion that the plaintiff's expert offered. Your Honor, I want to address one, oh, apologies. No, no, no, go on. I want to address one quickly remaining point, seeing a minute left here. Plaintiffs also repeatedly assert in their brief that these are negative expected value claims, and that the only class certification is necessary here to sort of enforce the purpose of the underlying statute. That's the only way we're going to enforce the statute. There's two problems with that, Your Honor. First, the bad faith statute here permit the recovery of attorney's fees, and as this court recognized in Castano v. American Tobacco, a case is not negative expected value if you can recoup attorney's fees, because then you can recoup the entire cost of litigating the case. And as the court also said in Flesher v. Metacredit, the negative expected value sort of inquiry is only pertinent to the superiority analysis. It doesn't obviate the need to show predominance, to show adequacy, or to show any other Rule 23 factor. And what the court also said in Flesher v. Metacredit is that fear of under-enforcement of a right is not justification for class certification. Plaintiffs must affirmatively demonstrate compliance with Rule 23, irrespective of this sort of underlying enforcement of the right. In Louisiana State Court, enforcement of a right is a policy rationale for enforcing class certification. Do you want to give 30 seconds to Sultana? Yes. So four things about Sultana. One, we think it's waived. They didn't cite it to the district court. Two, doesn't address standing at all. So to the extent that there is a 1973 sort of right to relief in Louisiana State Courts, that doesn't obviate the Article 3 standing issues that each name plaintiff or each class member will have to show. Three, Sultana addressed a different part of the statute. The sort of underlying bad faith itself in Sultana didn't require an underpayment. The underlying bad faith here, which is subsection B5 of the statute, does require an underpayment. It's the failure to pay the amount of any claim due. And the last point, Your Honor, is Sultana didn't address and subsequent Louisiana cases still say, no, no, no, you still need an underlying breach of contract to get to bad faith penalties. Sultana, there was. They breached the insurance contract and had to pay and then subsequently settled that litigation and then failed to pay that settlement. Here, for any insured who wasn't underpaid, there's no breach of contract. You got a lot in there. Thank you, sir. Apologies for talking fast. Your Honors, I'm going to begin by addressing the negative value issue because it was an issue that was never raised in the underlying court, nor was it raised in their briefing. They talk about how we're precluded from talking about Sultana, and I'll talk about why we're not later, but they shouldn't be able to raise this negative value issue at all. In fact, Judge Kane noted in his opinion that they did not contest that this was a negative value claim. So this is a negative value claim as far as the record is established, as far as the record is established, and that is entirely within his discretion. I thought Judge Kane limited the class to a negative value. Well, what Judge Kane did was, Judge Kane limited the class to people whose NADA value, clean NADA retail, was less than the unadjusted CCC base value. What Judge Kane said was, you're starting at the wrong point. Or rather, this is what plaintiffs said. Plaintiffs' whole lawsuit is not about condition, it's not about individual vehicle values, it's not about prior loss. They talk about, oh, well, plaintiffs are going to overcompensate it because what if somebody has a junker and they get NADA value? Well, you know, they shouldn't be able to get that. That's not what this case is about. Louisiana law says that if you're going to use a guidebook to start, you've got to start with a guidebook that is generally recognized. They're starting at the wrong value. But am I right that Louisiana law also says that NADA is not the required valuation? That is correct. There are multiple allowed valuations. Do you agree with the opposing counsel that nowhere will we find what the finite limit is? Do you agree with him on that point or not? Well, I think it's a question of fact. It's ultimately got to be resolved by the trier of fact. Certainly, we're going to suggest NADA. We don't accept the proposition, by the way, that they make that an insurer can go and pick and choose whichever is best for them. I know you were very strong in the brief about that, but it's not intuitive to me that an insurer in its contract wouldn't be able to rely on the least valued legal method. I don't think that would be I think that would just be a violation of general concepts of good faith and fair dealing. But let's assume that they can. They have the ability. This is a class action trial on a model. They have ability to attack the model. They have the ability to come and say, you know what? You're wrong. CCC for some of these folks would be less. We know some of them, 9% got more than the Kelly Blue Book. Is that correct? Correct. So those people, why would they be appropriately in the class? Well, because they can allege at this point and remember standing is based on assuming that we even have to have standing for absent class members. But standing is as Judge Southwick noted under Luzhin, it's decided based on the status of litigation at the time. Those people can certainly allege, and it has not yet been decided, that NADA or CCC is the appropriate vehicle for them. If there are some people for whom CCC and NADA is less then, I'm sorry, KBB and NADA are less than CCC, well those people, they don't have a problem at all. I'm going to let you go into the argument because it's complex and I sometimes ask too many questions, but just as to the named plaintiffs, is there any way that we can be sure that Sampson himself wasn't given more than, say, Kelly Blue Book? Well, there are two named plaintiffs. First of all, there's Sampson and Fagan. I'm just picking him out. I'm not sure that the record actually addresses because I don't think that the defendants addressed it in the lower court. But wouldn't we have to confirm ourselves as to standing as to the named plaintiffs? Wouldn't we have to? Well, again, he's got standing because at this point it hasn't been decided whether NADA or KBB are the appropriate benchmark evaluations. But we know Louisiana law says that NADA isn't required. But NADA is one of the allowed. And we know that what they have done is wrong. Not to mention, getting back to now we will go to Sultana, we certainly have argued at the lower court that injury is not an element of a claim for bad faith under 1892. It is our position that remember, in bad faith... Did this court even cite Sultana? It cited Oob, which is actually a later case than Sultana. And that may, frankly, be a mistake on my part in the briefing. I went to the seminal case Sultana. Oob certainly followed Sultana. The lower court cited Oob, which also reinforces that Sultana... Did you cite Sultana below to this court? I don't know if I did or not, but I'm the appellee, Your Honor. They raised this issue on appeal, and we cited Sultana in response to their assertion that there was no injury. In the lower court, we certainly argued... Is it fair to say that you agree that as to your contract claim, there has to be injury? That's an element of a... I don't, actually. If you look at the recent holding in Dennings v. Bond Pharmacy, which is a 5th Circuit holding, the mere breach of contract is a violation, is an injury, in fact, for standing purposes. And here, Louisiana law requires that the contract be modified, and this is cited in our papers. The contract has to be modified to include the requirements of 1892. So if they're violating 1892, they're in And that in itself is an injury, according to the 5th Circuit in Dennings v. Bond Pharmaceutical. Also, they're following a Supreme Court case that was handed down just before TransUnion, and I'm going to butcher the pronunciation. I think it's Uzabagiyan, but it's cited in the Dennings case. Standing, I don't think, even gets to be an issue in these cases, because certainly all of these plaintiffs had the harm occasioned on them of starting at the wrong point. They started with an unlawful value. They breached the curms of the contract. If they were going to use a database system such as what they chose to use, it had to be a generally recognized used motor vehicle in its choice. And you know, we had some discussions about the purpose of the statute. Your Honors, the purpose of the statute is to keep insurance companies' thumbs off the scale. And what they are doing is putting their thumbs on the scale by using all these algorithms, using these numbers to start with. Not even talking about condition adjustment, but just the starting point. What is the value of a retail vehicle? What is the retail value of a vehicle? They're starting with a number that they have generated. CCC, a company that is employed exclusively by insurance companies. No consumer can even use it, access it. That's what the statute is for, and that's what we're complaining about. They have violated the terms of their contract. So they contracted to pay you actual cash value. The vehicles are totally lost, and you're saying they shortchanged you because they used an internal methodology that undercuts any recognized source. That's basically your Glass Theory argument. And then if there are differentials following Slade, that's a damages issue, and the district court gets a lot of differentials. And if they are able to say, okay, for instance, for 9.2% of the class, they say that KBB is lower than CCC. If that's a viable defense, they can raise it on summary judgment, and those people will get their claims dismissed. But that doesn't mean that they don't have standing, and it doesn't mean that they shouldn't be in the class. Certainly, those people, at least at this point, can articulate an injury. I'm still stumbling over Samson, because this is the numbers I remember. Samson actually got more than another recognized blue book. I'm not sure I see how he has injury. Well, I don't know that Samson did get, and I don't think, I don't even know what's in the record, Your Honor, as to whether or not Samson got above CCC. I'm pretty confident he got 5.9 thousand. And you say that he should have gotten 6.7, citing NADA. I don't know how the algorithm is abbreviated. But what if the Kelly Blue Book value was 5.8? He wouldn't have an injury, would he? They didn't raise that in the lower court, Your Honor. I don't think it's appropriate to address it now. Okay, but why, if it's a standing issue, if there's no injury, it has to be raised in order to confirm that he's a proper litigant representing the rest of the class. Your Honor, the thing is, he does have standing, at least he can allege at this point. The only showing that's been made is NADA. It's certainly lower than NADA. They haven't refuted that there's some other system that's lower. Remember that we analyze standing according to the status of the litigation at the point where we are when we're asking the query. Right now, there's been no motion for summary judgment. He may lose on standing. They've refused throughout to ever identify any legally recognized? Is that what you're saying? They have not said there is a legal number for Samson that is lower than CCC. They haven't said that. They haven't put forth any evidence of that effect. We have shown that there is a legal number that is higher than CCC, and hence, Mr. Samson is injured. Now, if they come along later on summary judgment and show, well, actually, you're wrong, there is a legal level that's lower, then Mr. Samson will lose on summary judgment because that's the appropriate stage of analyzing standing at that point. And we may lose our class rep. One of them, I don't think, will lose Ms. Fagan because Ms. Fagan's differential was well over $1,000 in Ms. Fagan's case. So it's just a question of sequencing, and this isn't an issue that SLADE addressed, correct? SLADE covered a lot of ground to my memory. Much of it in your favor, but no one had presented this arbitrariness argument to the SLADE panel. Well, in SLADE, the question was KBB or NADA. And the court said, well, you can look at KBB or you can look at NADA. Again, I would say that that comes down to a question of this, quote, arbitrariness argument comes down to a question of merits that's going to have to be resolved as a question of law. One is, can they pick and choose? Can they pick whichever one's lowest? And if that gets resolved against certain plaintiffs, and then they can What's the best authority that an insurance company can? I thought that's exactly what the contract specifies. The contract doesn't say anything about what methods they can use. But why wouldn't they be entitled to give actual cash value, legally recognized, albeit smaller than others? Under what logic wouldn't they? Because, Your Honor, it would be, our position is that it would be arbitrary and capricious to just go and pick whichever guidebook is lowest. Keep going. But if they raise that, and if they're right, and if they can show there are other valuations for some small percentage of the class, so far they've shown it's at most 9.2%, then let them raise it on summary judgment. Those folks will lose. But it doesn't mean they don't have standing at this point. Your Honor, the rest of this comes down to a question of discretion of the trial court. I remember I was arguing the Prudhomme case, and I was saying how under Slade can Prudhomme be right? And a member of that panel asked me a very appropriate question and said isn't it possible that under the broad discretion of the trial court Prudhomme could be right in finding under its discretion that certain elements were not satisfied and Slade could be right finding under certain elements that predominance, adequacy, etc. are satisfied. And that was a question which, I have to be honest, I didn't have a very good answer. And that's why I think we lost in Prudhomme, was because it came down to the discretion of the lower court. The lower court exercised its discretion here in first identifying a common issue, and I think Slade certainly established that there is a common question as to whether or not they're violating the statute. Are they starting at the right number? Then we go to, is adequacy of representation? Now Slade found that, actually remanded on the question of adequacy because of plaintiff's decisions to limit their claims in the way that they had. Judge Cain addressed that issue of adequacy of representation following the rules that were laid forth in Slade. That was entirely within his discretion. Finally, you come down to predominance. And following the rules that were laid out in Slade, and by the way, predominance was one of the biggest issues contested in Slade. The opinion only addressed Comcast because that sort of seems to be where the sticking point was for the court. But remember that the court in Slade, Your Honor, I think was the author, pointed out that for the reasons espoused by the trial court, we find that the requirements of Rule 23b2 are met, with the exception of, and then went into the discussion of adequacy of representation that I just covered. Judge Cain here was certainly within his discretion in determining that just as in Slade, the requirements of Rule 23b2 had been met. Now there's this question of, can we apply the condition adjustments of CCC to NADA values? Well, that comes down really to, is the model correct? So I do think it's a merits question. But to the extent that there's a question of whether or not you can do it, I think Judge Cain, well within his discretion, relied on or rather determined that issue in favor of plaintiffs. And said, okay, to the extent that I've got to consider condition, and by the way, I'm not sure that I do because that's a contested issue in this case. But to the extent that I do, plaintiffs say they are going to accept the condition values at their face value. Here is what the CCC report says about its condition adjustment. The CCC report says, CCC makes dollar adjustments that reflect the impact that the reported condition has on the value of the loss condition compared to good condition. We're accepting that at face value. Judge Cain said we're entitled to accept that at face value. He did not accept  that that would be inappropriate. Yes, their witnesses did say that. But if you read the full testimony when they're asked, why did you say that? Their response is basically because reasons. They don't have a very good explanation of why it is that we can't rely on what these guys have said is the difference between the lost vehicle condition and a regular vehicle on the road. And Judge Cain apparently accepted that. And in his broad discretion, affirmed certification. There were some issues raised in the briefs, Your Honor, that were not addressed in my opponent's argument. I can address them, but if you're not interested, I'm happy to sit down. If you're happy, I think we'll be happy. Okay, thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. So first, starting with this multiple value issue that there's, under plaintiff's theory, any statutorily referenced valuation method establishes actual cash value as a matter of law. What they said is, well, you can come and just litigate that as to Arthur Sampson, and we can determine whether he was underpaid. The predominance issue in this case is that that same litigation will occur for each and every single class member. Every single class member, there will be a mini trial as to if there's a question of fact as to the best valuation source, what the best valuation source was for that individual, or if any permissible source establishes ACV, which is plaintiff's counsel's contention, then there'll be a mini trial as to whether the individual has paid more than any other statutorily permissible source, which is more than just guidebooks. It includes a fair market value survey, too. And we can envision all kinds of litigable issues about, oh, well, if we went back in time and did this fair market value survey... Counsel, if you ever decide you don't want to practice law, I think FedEx will hire you for that speed talking. Would you please slow down? Apologies, Your Honor. I'll slow down. Apologies. If there's going to be an individualized mini trial as to each insured as to whether or not they were paid more than the actual cash value of the vehicle, that destroys predominance. There's no generalized proof. There's no common evidence that triggers a yes-no liability for each member of the class. Well, it just might mean you'd have a bunch of different classes. But why isn't USAA obliged to say, as to any legally recognized theory, here's the dollar amount? If this court comes out and says, or a district court comes out and says, yes, the statute says any statutorily referenced valuation establishes actual cash value as a matter of law, I suspect that's what every insurer in Louisiana is going to do. They're going to start picking the lowest permissible value because that's just the end result of that kind of judgment. That's why USAA doesn't do that in the status quo. It believes its obligation under the insurance contract is to pay the actual value of a comparable vehicle. So it requires looking at the unique condition of the vehicle. But if the federal district court comes out and says, no, no, no, you can pick whatever the lowest possible value is out there, I suspect we're going to see every insurer come and do that in the state, and that's going to lead to lots of insureds being underpaid, including insureds in the current class. Not if ultimately after the fact, then the condition adjustments are made. It just starts at a legal point rather than you start at an illegal point. Well, it depends on how the district court would sort of frame that. If they say, no, no, no, you can pick a guidebook value irrespective of condition, because NADA, none of the guidebooks sort of address the unique condition of a vehicle. So if they say that value alone is sufficient, then it's going to be, well, let's race to the bottom here. But if they say that value alone is sufficient if you account for condition, well, then we're in the world of individualized inquiries as to determining the actual condition and value of each class member's vehicle. What's your response to Prince's statement that Judge Cain has already decided whatever difference there is between the computations in Slade and what CCC is like, he's already resolved that it is workable in this case, that you say it can't be added or subtracted to Kelly Blue Book and whatever, but the district court has already decided, which I guess would be a matter of fact, that it is proper. So how can we deal with that, or is it the wrong premise? So I think the district court's opinion didn't actually say, didn't make a factual finding that taking CCC condition adjustments, putting them on top of NADA values will create accurate vehicle values. If you read page 17 and 18 of the judge's opinion, Judge Cain's opinion, he cites out all USAA's evidence and then he says, well, this is a merits question, we don't need to decide at the class certification stage. And we think that's a legal error, because without a finding that there's a common proof, a class-wide measure to account for condition, then there's no way to determine to whom USAA is liable in the class. Did the Companion-Shields case get to the standing issues at all? The Companion-Shields case also briefed the standing issues, and it's also up to the Fifth Circuit on a 23-F petition. It has not been set for oral argument. I obviously can't say where that case stands, but it's... What did the district court decide? Did he take on the Sultana question? So the district court actually in a footnote said, oh, Sultana's not applicable because Sultana doesn't address Article 3 standing. And that might be why it wasn't raised by plaintiffs to the district court, because Judge Cain had already sort of said, Sultana doesn't resolve any Article 3 standing issues. The district court didn't address Sultana beyond that. I want to speak briefly about the Denny case that plaintiffs' counsel mentioned. That was a case about standing, not about the requirement for establishing breach of contract under Louisiana law. And what the Fifth Circuit actually said there was that the name plaintiff did not have standing. It said there was an injury in fact under the Supreme Court's, I'll butcher the name too, Uzabugnum case. And what Uzabugnum says is for the violations at issue in that case, there was nominal damages that plaintiffs had pled. And so, okay, nominal damages can give you the injury in fact. Under Louisiana law, under the elements of the breach of contract, still requires an injury. And in fact, standing is not dispensed in gross. You have to determine standing for each. So even if there was standing as to a breach of contract, which requires an element of injury, that doesn't mean there's standing for a 1973 violation. Thank you.